IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

GARY G.,

        Plaintiff,

  v.                              Civil Action No.
                                        6:22-CV-1139 (DEP)

KILOLO KIJAKAZI,
Acting Commissioner Social Security
Administration,

        Defendant.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF

LEGAL AID SOCIETY                         ELIZABETH LOMBARDI, ESQ.
OF MID-NEW YORK, INC.
221 South Warren Street, Suite 310
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                    SHANNON FISHEL, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on November 29, 2023, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2)	The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3)	The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:	December 7, 2023
	Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GARY G.,
                                                Plaintiff,

-v-                                             6:22-CV-1139

SOCIAL SECURITY,

                                                Defendant.
------------------------------------------------------------x
```

**DECISION TRANSCRIPT**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
November 29, 2023
100 South Clinton Street, Syracuse, New York


For the Plaintiff:

    LEGAL AID SOCIETY OF MID-NEW YORK, INC.
    221 South Warren Street
    Suite 310
    Syracuse, New York 13202
    BY:  **ELIZABETH VICTORIA LOMBARDI, ESQ.**

For the Defendant:

    SOCIAL SECURITY DEPARTMENT
    6401 Security Boulevard
    1520 Annex
    Baltimore, Maryland 21235
    BY:  **SHANNON FISHEL, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1          (The Court and all parties present by telephone.
2    Time noted:  2:21 p.m.)
3          THE COURT:  Well, let me begin by thanking counsel
4    for excellent and spirited presentations.  I've enjoyed working
5    with you.
6          I have before me a challenge brought on behalf of the
7    plaintiff to an adverse determination by the Commissioner of
8    Social Security finding that he was not disabled at the relevant
9    times and therefore ineligible for the benefits sought.  The
10   challenge is brought pursuant to 42, United States Code,
11   Sections 405(g) and 1383(c)(3).
12         The background is as follows:  Plaintiff was born in
13   May of 1962.  He is currently 61 years of age.  He was 57 at the
14   time of his application for benefits in February of 2020.
15   Plaintiff stands 5'8" in height and weighs approximately
16   140 pounds.  Plaintiff lives alone in an apartment in Rome, New
17   York.  He has a 12th grade education and while in school
18   attended regular classes.  He also has additional training as an
19   EKG assistant.  Plaintiff has a driver's license but no car.  He
20   served in the United States Army from February 1983 until
21   February 1990 and received an honorable discharge.
22         When the plaintiff last worked is somewhat equivocal
23   based on the record before the Court.  At page 391, he claims
24   that he stopped working in December of 2013.  In 2019, however,
25   he reported to another ALJ that he stopped working in 2017 and

1  that the reason he stopped working was because if he worked too
2  much, he would lose benefits of some sort.  Plaintiff has worked
3  as a hospital janitor, as a convenience store clerk, and as a
4  packer.  And at page 41 of the Administrative Transcript, during
5  the hearing, he testified that he walked out of every job that
6  he held because people aggravate him.
7             Physically, plaintiff suffers from emphysema or
8  chronic obstructive pulmonary disease, or COPD.  He also has
9  complained of right shoulder issues, groin issues.  For his
10 COPD, he uses an albuterol inhaler every three to four days, as
11 needed, based on shortness of breath.
12            Mentally, he suffers from various mental conditions.
13 They've been variously categorized, as the Administrative Law
14 Judge noted, to include, on occasion, depression, anxiety,
15 obsessive compulsive disorder, and at least by his therapist but
16 not any recognized medical professional, posttraumatic stress
17 disorder or PTSD.  It's also been referred to, what he has, as
18 fight to flight.
19            In terms of treatments, plaintiff has received
20 treatment from NPP Robert Sharpe from March of 2020 and Licensed
21 Clinical Social Worker Teresa Pascarella from 2017.  He has
22 received treatment for his various conditions, including his
23 physical conditions, from the Veterans Administration, both a
24 clinic in Rome and in Syracuse.  His primary physician is
25 described as Dr. Zaki Badawy.

1              Plaintiff's activities of daily living are fairly
2     extensive.  They include cooking, cleaning, doing laundry,
3     shopping.  He showers.  He grooms.  He watches television.  He
4     plays sports.  He plays video games.  He rides his bicycle one
5     hour per day, including in the winter.  He does not take public
6     transportation, but uses Medicaid cabs to attend his various
7     appointments.  He has, on occasion, fished with a friend.
8     Plaintiff is a smoker and has been encouraged to quit, including
9     at page 704 of the Administrative Transcript.
10             Procedurally, plaintiff applied for Supplemental
11    Security Income Title XVI benefits on February 24, 2020,
12    alleging an onset date of September 19, 2019.  It appears that
13    plaintiff had prior applications for benefits denied, including
14    in May of 2017, at which time he argued disability both on
15    physical and mental grounds, and September 23, 2019, where the
16    focus of that application was only on his mental condition.
17             In support of his application, plaintiff claimed
18    disability based on anxiety, fight to flight, COPD, mental
19    issues, and a sleep disorder.  That's at page 391 of the
20    Administrative Transcript.
21             On May 19, 2021, a hearing was conducted by
22    Administrative Law Judge Elizabeth Koennecke.  Judge Koennecke
23    held a supplemental hearing with a vocational expert on
24    November 23, 2021.  On December 2, 2021, Administrative Law
25    Judge Koennecke issued an adverse determination which became a

1  final determination of the agency on October 5, 2022, when the
2  Social Security Administration Appeals Council denied
3  plaintiff's application for review.  This action was commenced
4  on November 2, 2022, and is timely.
5         In her decision, Administrative Law Judge Koennecke
6  applied the familiar five-step sequential test for determining
7  disability.  At step one, she concluded that plaintiff has not
8  engaged in substantial gainful activity since February 24, 2020.
9         At step two, she concluded that plaintiff suffers
10 from severe impairments that impose more than minimal
11 limitations on his ability to perform basic work functions,
12 specifying those as a mental impairment, variously
13 characterized.
14         At step three, ALJ Koennecke concluded that
15 plaintiff's conditions do not meet or medically equal any of the
16 listed presumptively disabling conditions set forth in the
17 Commissioner's regulations.  After reviewing plaintiff's claims
18 and addressing them and giving an outline of her evaluation of
19 the various medical opinions in the record, ALJ Koennecke -- I
20 should say, prior to doing that, ALJ Koennecke concluded that
21 plaintiff retains the residual functional capacity, or RFC, to
22 perform a full range of work at all exertional levels with the
23 following limitations:  He can understand and follow simple
24 instructions and directions, perform simple tasks independently,
25 maintain attention and concentration for simple tasks, and

1    regularly attend to a routine and maintain a schedule.  The
2    claimant can handle simple repetitive work-related stress in
3    that he can make occasional decisions directly related to the
4    performance of simple tasks in a position with consistent job
5    duties that does not require him to supervise or manage the work
6    of others.  The claimant should avoid work requiring more
7    complex interaction or joint effort to achieve work goals.  He
8    can have no contact with the public.
9            Applying that residual functional capacity at step
10   four, ALJ Koennecke concluded that plaintiff is capable of
11   performing his past relevant work as a material handler, but not
12   as a maintenance machine repairer.
13           She made an alternative finding at step five and,
14   based on the testimony of the vocational expert, concluded that
15   plaintiff is capable of performing other available work in the
16   national economy, citing as representative positions those of
17   dishwasher, floor waxer, and janitor and, therefore, concluded
18   that plaintiff is not disabled.
19           As you know, the Court's task at this juncture is
20   limited and the standard which I must apply is extremely
21   deferential.  The Second Circuit has observed as much in *Brault*
22   *v. Social Security Administration Commissioner*, 683 F.3d 443
23   from 2012, and more recently reaffirmed and reiterated in
24   *Schillo v. Kijakazi*, 31 F.4d 64 from 2022.
25           I must determine whether correct legal principles

1  were applied and the resulting determination is supported by
2  substantial evidence, which is defined as such relevant evidence
3  as a reasonable mind would find sufficient to support a
4  conclusion.
5          In this case, plaintiff has raised four contentions.
6  The first two are somewhat interrelated.  He contends first at
7  step two that the Administrative Law Judge erred in not finding
8  his COPD to be severe and relatedly argues that the residual
9  functional capacity finding should have included a limitation on
10 exposure to pulmonary irritants, extreme temperatures, and
11 humidity.
12         With regard to plaintiff's mental limitations, he
13 concludes that the residual functional capacity should have
14 included a greater limitation on the interaction with others and
15 complains of the failure to make specific findings concerning
16 plaintiff's ability to handle stress.
17         First, turning to the step two determination.  At
18 step two, the claimant must show that he or she has a medically
19 determinable impairment that rises to the level of a severe
20 impairment.  An impairment fails to reach that threshold of
21 severity when it does not significantly limit a claimant's
22 physical or mental ability to perform basic work activities,
23 which include the ability to engage in exertional functions;
24 see, hear, or speak;  understand, remember, and carry out simple
25 instructions; use judgment; respond appropriately to

1   supervision, coworkers, and usual work situations; and deal with
2   changes in a routine work setting, 20 C.F.R. Section 416.22.
3              Admittedly, the requirement at step two to establish
4   a severe impairment is de minimis and intended only to screen
5   out the weakest of cases.  However, the mere presence of a
6   disease or impairment or establishing that a person has been
7   diagnosed or treated for a disease or an impairment is not by
8   itself sufficient to render a condition severe.  And, of course,
9   the burden is on the plaintiff through step four to establish
10  not only the existence of a diagnosed condition, but the
11  resulting limitations.
12             There are three opinions that arguably speak to
13  plaintiff's physical condition.  Dr. Rita Figueroa, a
14  consultative examiner, concluded that plaintiff should avoid
15  exposure to pulmonary irritants.  That's at page 549 of the
16  Administrative Transcript.  That was partially rejected by the
17  Administrative Law Judge at page 18 of the Administrative
18  Transcript.  And specifically, the environmental restrictions
19  were found to be inconsistent with the evidence and the cited
20  reasons are:  One, the record convincingly demonstrates the
21  claimant to have no respiratory difficulties; two, not only has
22  the claimant reported riding his bicycle an hour a day during
23  the winter; but three, he is a current smoker.  And she
24  concludes the claimant's ongoing tobacco use and his ability to
25  perform a generally vigorous activity in cold temperatures are

1  wholly inconsistent with the environmental restrictions Dr.
2  Figueroa and also Dr. Koenig described.  And Dr. Koenig is a
3  state agency consultant, he did not examine the plaintiff, but
4  did review plaintiff's medical records and concluded at page 122
5  of the Administrative Transcript that plaintiff should avoid
6  concentrated exposure to fumes, odors, dust, gases, poor
7  ventilation, et cetera.
8           Dr. B. Stouter, a state agency consultant, issued an
9  opinion on August 14, 2020.  In that opinion at page 108, he or
10 she concluded he does not suffer from any severe physical
11 impairment.  The opinion evidence, of course, is subject to
12 review under the new regulations that took effect in March of
13 2017.  Under those regulations, the Commissioner does not any
14 longer defer or give specific evidentiary weight, including
15 controlling weight, to any medical opinions, including those
16 from medical sources.  Instead, the ALJ must consider whether
17 those opinions are persuasive by primarily considering whether
18 they are supported by, and consistent with, the record in the
19 case, 20 C.F.R. Section 416.920c(a).  And then, of course, the
20 ALJ must articulate in his or her determination as to how
21 persuasive each medical opinion is found to be when considering
22 supportability and consistency.  There are other factors which
23 may be considered, but the ALJ is not required to explain how
24 those additional factors are considered.
25          In my view, substantial evidence supports the

1  determination that plaintiff's COPD or emphysema, however it is
2  characterized, is severe at step two.  There has been minimal
3  treatment for COPD.  As the Administrative Law Judge noted
4  plaintiff rides a bike one hour per day, including in winter,
5  and smokes.  While Dr. Figueroa did conclude in the medical
6  source statement that there should be limited exposure, in fact,
7  no exposure to pulmonary irritants, when she examined the
8  plaintiff's chest and lungs, she found increased AP diameter but
9  clear to ascultation, percussion normal, no significant chest
10 wall abnormality, and normal diaphragmatic motion.  So as was
11 noted, there does not appear to be support in the observations
12 during the exam that was for the limitation in the medical
13 source statement.
14          I also note that I reviewed the treatment notes from
15 both Nurse Practitioner Sharpe and from the VA, and they don't
16 seem to support, as the ALJ noted, plaintiff's claim of
17 difficulty in breathing and the need for restriction on
18 pulmonary irritants.  September 1, 2020, plaintiff denied
19 shortness of breath.  That's at 570 and 562.  On April 7, 2021,
20 plaintiff was negative for shortness of breath.  That's at 700.
21 On July 2, 2020, plaintiff denied shortness of breath.  That's
22 at 579.  On October 8, 2010, a note from the VA found mild
23 atelectasis left lung base, no pleural effusion or pneumothorax
24 identified.  That's at 620 and 503.  On August 21, 2019, lungs
25 were clear, no wheezing.  That's at 664.  On April 8, 2020, no

1   complaints.  That's at 631.  On April 8, 2021, it was noted that
2   plaintiff was still smoking, uses inhaler every three to
3   four days when short of breath.  That's at 704.  In conclusion,
4   I find that the determination at step two is supported by
5   substantial evidence when it comes to rejection of COPD.
6           Similarly, with regard to the residual functional
7   capacity finding and the argument that it should have included a
8   limitation on exposure to irritants and the cold, of course an
9   RFC is pivotal to any determination of a disability.  An RFC, of
10  course, represents the range of tasks a plaintiff is capable of
11  performing notwithstanding the impairments at issue, 20 C.F.R.
12  Section 416.945(a).  By that, we mean a claimant's maximum
13  ability to perform sustained work activities in an ordinary
14  setting on a regular and continuing basis, meaning eight hours a
15  day for five days a week or an equivalent schedule.  And, of
16  course, an RFC determination is informed by consideration of
17  claimant's physical and mental abilities and the evidence in the
18  record.
19          In this case, as I said, Dr. Figueroa stated that
20  plaintiff should avoid exposure to pulmonary irritants.  Dr.
21  Koenig concluded that plaintiff should avoid concentrated
22  exposure to fumes, odors, et cetera.  I don't think that any
23  error in that regard would by definition be harmless because I
24  think an argument could be made that a vocational expert should
25  be queried on whether or not a limitation on exposure to

1  irritants would affect the step five alternative disposition.

2  However, as I indicated previously, at page 18 the

3  Administrative Law Judge rejected the need for environmental

4  limitations and explained convincingly why she did that.  I am

5  not able to say that no reasonable factfinder could conclude as

6  the Administrative Law Judge did.

7        The treating source rule does not apply.  Neither of

8  the two professionals that opined to a limitation were treating

9  sources.  One did not examine the plaintiff.  The other did, but

10 as I indicated, the results of the examination don't really seem

11 to support the final determination.  So in conclusion, I find

12 that the plaintiff failed to prove any limitations on exposure

13 is warranted.

14       Turning to the mental RFC component, it's noteworthy

15 that there are significant limitations on interaction, no

16 contact with the public, no supervision of others, no complex

17 interaction or joint effort, simple tasks only independently.

18 It's clear from the record, including plaintiff's testimony,

19 that his stress comes from interaction with others and

20 specifically coworkers.  He stated during the hearing at page

21 34, I believe, that he did not have problems with supervisors.

22 In my view, the limitations are supported by the opinions of Dr.

23 May and Dr. Butler and, of course, as state agency consultants,

24 their opinions can provide substantial evidence for a resulting

25 determination.

1            Dr. May, both in the original report, which is
2    Exhibit 4A, and later, on page 553, in August of 2020, stated
3    his or her opinion that based on the evidence in the file,
4    claimant can perform work tasks with limited and superficial
5    contact with other workers and the public, and specified that
6    the limitations are due to anxiety and depression, currently
7    moderate in severity.  In my view, the RFC determination, which
8    is exceedingly specific in many regards when it comes to
9    interaction with others, accommodates that determination.
10   Similarly, in his or her opinion, Dr. Butler found moderate
11   limitations, but in the end, at page 125, stated claimant is
12   capable of simple to complex tasks in low pressure settings with
13   limited interpersonal contact.  Again, I believe that that
14   opinion is adequately accommodated by and consistent with the
15   RFC determination in this case.
16           I also note that there are not necessarily a lot of
17   inconsistencies with the opinion of Therapist Pascarella.  I
18   have been through the treatment notes from Therapist Pascarella
19   and Nurse Practitioner Sharpe.  The findings with regard to
20   plaintiff's mental health condition are relatively benign.  He's
21   not had any hospitalization or emergent treatment.  And I note,
22   of course, it is well accepted that an Administrative Law
23   Judge's RFC finding does not need to perfectly match any one
24   opinion.  In my view, plaintiff's problem essentially is with
25   coworkers.  He stated at page 44, no trouble with supervisors.

1  The RFC specifies no contact with the public.  And I think the
2  remaining aspects of the RFC not requiring him to supervise or
3  manage the work of others and avoiding work requiring more
4  complex interaction or joint effort to achieve work goals
5  adequately accommodates what limitations are necessary to
6  address his mental health conditions.
7           In the end, I find that substantial evidence supports
8  the RFC finding.  Plaintiff's counsel confirmed that assuming
9  the RFC finding is supported, he does not challenge -- plaintiff
10 does not challenge the step four or step five determinations,
11 and so I find that proper legal principles were applied and
12 substantial evidence supports the resulting determination.  I
13 will grant judgment on the pleadings to the defendant and order
14 dismissal of plaintiff's complaint.
15          Thank you, both.  I hope you have a wonderful holiday
16 season.
17          MS. LOMBARDI:  Thank you, your Honor.
18          MS. FISHEL:  Thank you, your Honor.
19          (Time noted:  2:48 p.m.)
20
21
22
23
24
25

15

```
 1
 2
 3
 4                  CERTIFICATE OF OFFICIAL REPORTER
 5
 6
 7            I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,
 8   NYRCR, Official U.S. Court Reporter, in and for the United
 9   States District Court for the Northern District of New York, DO
10   HEREBY CERTIFY that pursuant to Section 753, Title 28, United
11   States Code, that the foregoing is a true and correct transcript
12   of the stenographically reported proceedings held in the
13   above-entitled matter and that the transcript page format is in
14   conformance with the regulations of the Judicial Conference of
15   the United States.
16
17            Dated this 1st day of December, 2023.
18
19            s/ Hannah F. Cavanaugh_____
20            HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
21            Official U.S. Court Reporter
22
23
24
25
```